UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAED SULEIMAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHN ASHCROFT, Attorney General of the United States; et al.,<br><br>                    Defendants. | Civil Action No. 04-12373 RWZ |

**MEMORANDUM OF LAW IN SUPPORT OF
RESPONDENTS' MOTION TO REMAND PROCEEDINGS TO
THE DEPARTMENT OF HOMELAND SECURITY, AND
<u>MOTION TO DISMISS IMPROPER PARTY RESPONDENT</u>**

On November 8, 2004, Raed Suleiman filed a petition with this Court, 8 U.S.C. § 1447(b) seeking a hearing on his naturalization application. That statute provides that, if there is a failure to make a determination on naturalization within 120 days of an interview of the applicant for naturalization, "the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter," and "[s]uch court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." For the reasons explained below, and consistent with § 1447(b), respondents respectfully request that the Court remand this matter to the United States Citizenship and Immigration Services ("USCIS"), of the Department of Homeland Security ("DHS"). Respondent Robert S. Mueller III, Director of the Federal Bureau of Investigation ("FBI"), also moves for dismissal because he is an improper party respondent.

## STATUTORY AND REGULATORY BACKGROUND

A.   **Authority to Naturalize Aliens**

Until 1990, United States District Courts sat as naturalization courts and were vested with exclusive jurisdiction to pass upon the qualifications of an applicant for naturalization and to naturalize aliens as citizens of the United States. See 8 U.S.C. §§ 1101(a)(24), 1421(a) (repealed 1990); see also Shomberg v. United States, 348 U.S. 540 (1955). Under this two-tiered system, the applicant submitted a preliminary naturalization application to the Immigration and Naturalization Service ("INS"), which conducted a preliminary investigation of the applicant and made a non-binding recommendation to the district court as to whether the application should be approved or denied. See 8 U.S.C. § 1445(b), 1446(b), (d) (repealed 1990); 8 C.F.R. §§ 334.11, 335.11-.13 (1990). The actual decision to approve or deny the naturalization application was vested solely with the federal court, which took jurisdiction based on a petition filed by the applicant and administered the oath of allegiance. See 8 U.S.C. §§ 1421, 1445, 1447, 1448 (repealed 1990).

In 1990, Congress enacted the Immigration Act of 1990, Pub. L. No. 101-649, § 401, 104 Stat. 4978 ("IMMACT"), which overhauled the naturalization process in favor of a one-tier administrative procedure. The central purpose for this shift to an administrative naturalization process from a judicial one was to reduce the waiting time for eligible naturalization applicants, who encountered unwarranted delays because of the two-tiered process and the backlogs in many federal courts. See 135 Cong. Rec. H4539-02 (July 31, 1989) ("the current system is one which requires a two-step process, one within the Immigration and Naturalization Service, and second, in the U.S. district court, and this legislation is directed to change that process and to create a

one-step option which will allow citizenship to be more expeditiously provided to those who qualify") (statement of Rep. Morrison), 1989 WL 182156, *H4542; H. R. Rep. No. 101-187, at 8 (1989) (statement of Rep. Morrison); <u>see also</u> H.R. Rep. No. 102-287, at 4, <u>reprinted in</u> 1991 U.S.C.C.A.N. 1362, 1363 ( "The 1990 Act was intended to streamline the citizenship process, which had been plagued by extensive delays * * *.  The causes of the delays were twofold:  First, duplicative paperwork resulting from overlapping administrative responsibilities between the courts and INS; and second, the occasional inability of some courts to hold timely oath-taking ceremonies due to crowded dockets.").

Under IMMACT § 401, Congress transferred the power to naturalize from the district courts and vested the Attorney General -- now the Secretary of DHS[1] -- with "sole authority to naturalize persons as citizens of the United States." <u>See</u> 8 U.S.C. § 1421(a) (2000).  Under the administrative naturalization process, USCIS is responsible for adjudicating naturalization applications, including rendering a preliminary investigation of the applicant, conducting an examination, and making a determination as to whether to grant or deny the application.  <u>See</u> 8 U.S.C. § 1446(a), (b), (c).  If USCIS initially denies a naturalization application, the applicant may seek administrative review of the denial by requesting a hearing before a supervisory immigration officer.  8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(b) (2004).

While vesting the primary naturalization authority with the Secretary of DHS, however, Congress did not completely eliminate the district court's jurisdiction over the naturalization

---

[1] The transfer of the former INS's naturalization functions to the newly-created DHS included the transfer of the authority to naturalize from the Attorney General to the Secretary of DHS.  <u>See</u> Homeland Security Act of 2002, Pub. L. No.107-296, § 1512(d), 116 Stat. 2135, 2310.

application process.  For example, the district courts may still administer the citizenship oath of allegiance.  See 8 U.S.C. § 1421(b)(1).  The district courts also have jurisdiction to review de novo applications for naturalization denied as a result of the administrative review procedure under § 1447(a).  See 8 U.S.C. § 1421(c).  Finally, under 8 U.S.C. § 1447(b), the provision at issue here, the applicant may apply to the appropriate district court for a hearing on the naturalization application if the INS does not grant or deny the application within 120 days after the naturalization interview.  In such case, the court "may either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter."  8 U.S.C. § 1447(b).

      B.      **The Statutory Requirement to Conduct Background Investigations**

Congress has directed that the government conduct a thorough background investigation of each applicant to confirm that the applicant is eligible for naturalization.  See 8 U.S.C. § 1446(a).  To this end, the former INS adopted regulations providing, *inter alia*, that:

> Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application * * *.

8 C..F.R. § 335.1 (2004).  The need to conduct a background investigation of an applicant for naturalization is necessitated by the fact that, to be eligible for naturalization, an applicant must establish that he is a person of good moral character, see 8 U.S.C. § 1427(d), and an alien cannot establish good moral character if, *inter alia*, he or she has been convicted of certain criminal offenses, including crimes involving moral turpitude.  See 8 U.S.C. § 1101(f).

Pursuant to this statutory requirement, USCIS conducts several forms of security and background checks when a lawful permanent resident alien applies for naturalization to ensure that the alien is eligible for naturalization and that he or she is not a risk to national security or public safety. See Declaration of Debra Zamberry ("Zamberry Decl.") ¶ 2. These security and background checks include: (a) a record check of the alien made against DHS' own immigration systems; (b) an FBI fingerprint check for relevant criminal history records on the alien *(e.g.* arrests and convictions); (c) a check against the DHS-managed Interagency Border Inspection System ("IBIS"), which contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, including the Central Intelligence Agency ("CIA"), FBI, other divisions of the United States Department of Justice, the Department of State, DHS/U.S. Customs and Border Protection ("CBP"), and other DHS agencies; and (d) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS. Id. The IBIS system includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity. Id.

If a background or security check reveals derogatory information on the alien (i.e., a "hit"), then USCIS works with other divisions of DHS and other law enforcement and intelligence agencies, as necessary, to obtain all available information concerning the derogatory record. Id. ¶ 3. Clearance of the individual in such cases may take additional time pending the law enforcement agency's response and ultimate resolution. Id. ¶ 9. Prior to a final adjudication on a request for naturalization, USCIS requires a definitive and favorable response on all background checks. Id.

In 1997, Congress enacted legislation that underscores the importance it places on the favorable completion of a background investigation as a necessary prerequisite to an application for naturalization. That legislation mandated that "none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997." Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997), see 8 U.S.C. § 1446 Historical and Statutory Notes (Criminal Background Checks).

## STATEMENT OF FACTS

On February 14, 2002, the petitioner, Raed Suleiman filed an application for naturalization (N-400) at the Vermont Service Center. Id. ¶ 7. On March 10, 2003, Mr. Suleiman was interviewed in the Pittsburgh, PA USCIS office. Id. As of this date, there has not been a final resolution regarding Mr. Suleiman's background checks. Id. ¶ 8. USCIS is continuing its background investigation of Mr. Suleiman and is, at this time, unable to proceed to final adjudication of his naturalization application until there is a final resolution of the background checks. Id. ¶ 11.

## DISCUSSION

**I.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO REMAND MR. SULEIMAN'S NATURALIZATION PROCEEDINGS TO DHS**

Section 1447(b) provides that, if there is a failure to make a determination on naturalization within 120 days of an interview of the applicant for naturalization, "the applicant may apply to the United States district court for the district in which the applicant resides for a

hearing on the matter," and "[s]uch court has jurisdiction over the matter and may either determine the matter or remand, with appropriate instructions, to [USCIS] to determine the matter." This Court therefore has discretion to either assert jurisdiction and adjudicate Mr. Suleiman's application for naturalization, or remand this matter to USCIS with appropriate instructions. For the following reasons, we submit that this Court should exercise its discretion and remand this matter to USCIS, with any appropriate instructions.

    1. The statutory naturalization scheme established by Congress since 1990 embodies several different, and sometimes competing, preferences. First, as explained *supra*, the 1990 amendments were primarily designed to relieve eligible applicants of undue delays in the adjudication of their naturalization applications. See also H.R. Rep. No. 101-187, at 8 (July 27, 1989) ("By vesting authority for naturalization with the Attorney General, the applicant will be relieved of onerous paperwork burdens, confusing divisions of responsibilities between the Courts and the Department of Justice, and unduly lengthy processing times to achieve their goal of acquiring U.S. citizenship."). In addition, when it overhauled the naturalization process in favor of a one-tier administrative procedure, Congress left intact § 1447(b), which allows an alien to request a hearing before a district court where a determination on the alien's naturalization application has not been made within 120 days after the alien has been interviewed. See 8 U.S.C. § 1447(b).

    At the same time, Congress left in place the requirement that the INS (and now, DHS) conduct and complete a thorough background investigation of each applicant to confirm that the applicant is eligible for naturalization. See 8 U.S.C. § 1446(a); see also 8 C..F.R. § 335.1 (2004). Congress reiterated the importance of this statutory requirement by enacting Pub. L. No.

105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997), in which Congress made clear that *no* funds could be used to complete the adjudication of a naturalization application unless and until confirmation has been received by the FBI that a full criminal background check has been completed.  See 8 U.S.C. § 1446 Historical and Statutory Notes (Criminal Background Checks).

    2.  In this case, because there has not been a final resolution regarding Mr. Suleiman's background checks, USCIS is unable at this time to proceed to final adjudication of his naturalization application at this time.  See Zamberry Decl. ¶ 8, 11.  USCIS attempts to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible applicant for naturalization must wait longer than is reasonably necessary, and is continuing to conduct its background investigation of Mr. Suleiman.  Id. ¶ 9, 11.  Prior to a final adjudication on a request for naturalization, however, and consistent with Congressional intent, USCIS requires a definitive and favorable response on all background checks, which has not yet taken place with respect to Mr. Suleiman.  Id. ¶ 8-9, 11.

    The importance of allowing USCIS to complete this process cannot be overstated.  As the Supreme Court has adumbrated, the government has a "strong and legitimate interest in ensuring that only qualified persons are granted citizenship," and "[t]he Government is entitled to know of any facts that may bear on an applicant's statutory eligibility for citizenship, so that it may pursue leads and make further investigation if doubts are raised."  Berenyi v. INS, 385 U.S. 630, 637, 638 (1967).  Indeed, on occasions, law enforcement checks have revealed significant derogatory information regarding alien applicants, including information that has sometimes resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States.  Id. ¶ 3.  In many instances, the disqualifying information on the


...

...

alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.  Id.  For example, persons on a "watch list" who are suspected of terrorist activity will not necessarily be identified through an FBI fingerprint check, but could be identified through an IBIS record check or an FBI name check of investigation databases.  Id. ¶ 5.[2]

Under these circumstances, this Court should exercise its discretion and, consistent with § 1447(b), remand this matter to USCIS to allow it to complete its investigation of Mr. Suleiman.  This is not a case in which USCIS has unduly delayed adjudication of Mr. Suleiman's application; rather, it is a case in which the agency is following the clear directives of Congress that all background investigations of an applicant for naturalization be completed prior to final adjudication of that application.  Allowing USCIS to complete its investigation will afford the Executive Branch the opportunity to use its expertise to investigate fully any concerns that may have arisen about Mr. Suleiman's background.  This Court is not an investigative body, and we respectfully submit that it is neither in the interests of the parties nor this Court to circumscribe USCIS's investigation and prematurely adjudicate Mr. Suleiman's application prior to the completion of all necessary background checks.

Mr. Suleiman therefore misses the mark in arguing (Complaint ¶ 12) that, "[i]f the petition is approved and the Plaintiff becomes a U.S. Citizen and then later the FBI and/or the CIS determine that he is a criminal or terrorist, they can always move to rescind the citizenship

---

[2]  This is not to say, and we wish to emphasize that we are *not* suggesting, directly or indirectly, that any of these situations is necessarily applicable to Mr. Suleiman.  We are merely emphasizing the critical importance that the background checks play in adjudicating an application for naturalization, and why it is necessary for those checks to be favorably completed before an application can by finally adjudicated.

and they will win that case." Congress has decreed that no funds shall be expended to complete the adjudication of an application for naturalization "unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed," Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997), see 8 U.S.C. § 1446 Historical and Statutory Notes (Criminal Background Checks), and this legislation evinces Congress' clear intent that an application for naturalization should not be acted upon until the FBI has *completed* a full criminal background check on the applicant. This Court may not divorce its consideration of whether to exercise jurisdiction and adjudicate Mr. Suleiman's application under § 1447(b) from these other statutory provisions. As the Supreme Court has emphasized, it is a "cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991).

Moreover, deferring to the administrative process and allowing USCIS to complete its investigation will cause no prejudice to Mr. Suleiman, and is consistent with Congressional intent. By providing for administrative decisions, administrative appeals, and a limited role for the courts, Congress evidenced its strong preference that naturalization applicants exhaust their administrative remedies before seeking judicial review of their applications. See 8 U.S.C. §§ 1421(c) & (d), 1447(a). Here, if at the conclusion of its investigation, USCIS grants Mr. Suleiman's application, there will be no need for this Court's involvement. If the application is denied, Mr. Suleiman may seek administrative review of that denial. See 8 U.S.C. § 1447(a). That review will provide him with a hearing where he will have opportunity to subpoena witnesses, submit documentary evidence, and cross examine any witnesses called on behalf of

the government.  See 8 U.S.C. § 1447(d).  And, if the denial of his application is affirmed, Mr. Suleiman has a statutory right to seek review of that denial in this Court.  See 8 U.S.C. § 1421(c).

We acknowledge that Mr. Suleiman is undoubtedly frustrated by the fact that his application for naturalization has not yet been resolved.  And USCIS indeed attempts to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible applicant for naturalization must wait longer than is reasonably necessary.  See Zamberry Decl. ¶ 9.  But the interest in expedition is always subject to Congress' overriding interest in ensuring that aliens who seek naturalization meet all the necessary qualifications, which includes a thorough background investigation.  Where, as here, there has not been a final resolution regarding an applicant's background checks, prudence should trump dispatch, and this Court, in the exercise of its discretion under § 1447(b), should allow the administrative process to be completed and remand this matter to USCIS.

## II. DIRECTOR MUELLER IS NOT A PROPER PARTY RESPONDENT

This Court should also dismiss Director Mueller from this action, as he is not a proper party respondent.  Section 1447(b) provides that, if a determination regarding naturalization is not made within 120 days, the Court can adjudicate the matter "or remand the matter, with appropriate instructions, *to the Service* to determine the matter." (emphasis supplied).  The statute makes no reference to the FBI, and the FBI does not make the determination regarding naturalization.  Director Mueller therefore is not a proper party respondent.

Mr. Suleiman recognizes this distinction, but argues (Complaint ¶ 12) that, upon information and belief, the delay in the adjudication of his application is due in part to the "FBI's failure to timely complete the security background check on the Plaintiff," and avers that

"whereas the statute requires the petitioner to be timely adjudicated, failure of the FBI to complete a background investigation in 14 months should not be reason for further delay."

Second, and more importantly, if Mr. Suleiman is complaining that the FBI has unduly delayed completing his criminal background check, he has a remedy under the Administrative Procedure Act, which provides that a court may "compel agency action unlawfully withheld or unreasonably delayed * * *." 5 U.S.C. § 706(1). The statute at issue in this case, § 1447(b), provides for no such remedy.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

For the foregoing reasons, respondents respectfully request that the Court, in the exercise of its discretion under § 1447(b), remand this matter to USCIS for its adjudication of Mr. Suleiman's application for naturalization. Respondents further respectfully request that Director Mueller be dismissed as an improper party respondent.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Mark T. Quinlivan
MARK T. QUINLIVAN
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
617-748-3606

Dated: January 13, 2005

## CERTIFICATE OF SERVICE

I hereby certify that copy of the foregoing was served by mail, on January 13, 2005, upon Jeffrey W. Goldman, Testa, Hurwutz & Thibeault, LLP, 125 High Street, Boston, MA 02110.

/s/ Mark T. Quinlivan
Mark T. Quinlivan
Assistant U.S. Attorney