UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAED SULEIMAN,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN ASHCROFT, Attorney General of the United States; et al.,<br><br>    Defendants. | Civil Action No. 04-12373 RWZ |

## DECLARATION OF DEBRA E. ZAMBERRY

I, Debra E. Zamberry, do hereby declare and say:

1. I am the Officer in Charge of the Pittsburgh, PA office for the United States Citizenship and Immigration Services ("USCIS") in the Department of Homeland Security ("DHS"). I oversee the adjudication of applications for benefits including applications for naturalization. I have held the position of Officer in Charge, including time as Interim Officer in Charge, since March 1, 2003. From September 1998 to March 2003, and prior to serving as Officer in Charge, I was a Supervisory District Adjudications Officer. I make this declaration based upon personal knowledge and information made known to me in the course of my professional duties.

2. When a lawful permanent resident alien applies to USCIS for naturalization, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for naturalization and that he or she is not a risk to national security or public safety. These background checks currently include: (a) a record check of the alien made against DHS' own

immigration systems; (b) a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records on the alien (e.g. arrests and convictions); (c) a check against the DHS-managed Interagency Border Inspection System ("IBIS"), which contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, including the Central Intelligence Agency ("CIA"), FBI, other divisions of the United States Department of Justice, the Department of State, DHS/U.S. Customs and Border Protection ("CBP"), and other DHS agencies; and (d) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS. IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity.

3. On occasions, these law enforcement checks have revealed significant derogatory information regarding alien applicants for immigration benefits, including applicants seeking naturalization, which has resulted in the alien being found ineligible for naturalization or other benefits and USCIS' denial of the application. This information has also sometimes resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final EOIR order. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

4. If a background or security check reveals derogatory information on the alien (i.e., a "hit"), then USCIS works with other divisions of DHS and other law enforcement and intelligence agencies, as necessary, to obtain all available information concerning the derogatory

record. Depending on the information, DHS/ICE may place the alien in immigration proceedings to remove him or her from the United States.

5. Although an alien's file may show that an FBI fingerprint check was performed, these checks frequently do not reveal the types of derogatory information described above, particularly when it is not information that has resulted in an arrest or criminal conviction. For example, persons on a "watch list" who are suspected of terrorist activity will not necessarily be identified through an FBI fingerprint check, but could be identified through an IBIS record check or an FBI name check of investigation databases.

6. I have reviewed the administrative file relating to Raed Suleiman, and thus am familiar with the facts and circumstances of his case.

7. Mr. Suleiman filed an application for naturalization (N-400) on February 14, 2002, at the Vermont Service Center. On March 10, 2003, Mr. Suleiman was interviewed in the Pittsburgh, PA USCIS office.

8. As of this date, there has not been a final resolution regarding Mr. Suleiman's background checks.

9. USCIS attempts to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible applicant for naturalization must wait longer than is reasonably necessary. Prior to a final adjudication on a request for naturalization, USCIS requires a definitive and favorable response on all background checks.

10. In addition, Mr. Suleiman's fingerprint check has expired. According to USCIS procedures, if Mr. Suleiman's background check is resolved favorably, he will be required to be fingerprinted again and the prints will have to be resubmitted to the FBI prior to the grant of his application.

11. Based upon the reasons outlined above, USCIS is continuing its background investigation of Mr. Suleiman and is, at this time, unable to proceed to final adjudication of his naturalization application until there is a final resolution of the background checks.

I declare under penalty of perjury that based upon reasonable inquiry and my knowledge, information and belief, the foregoing is true and correct.

Executed on January 12. 2005, at
Pittsburgh, PA

DEBRA E. ZAMBERRY
Officer In Charge